UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNAE COLEMAN,<br><br>               Plaintiff,<br><br>       v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>               Defendant. | Case No. CV 10-5641 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

**I.    SUMMARY**

On August 4, 2010, plaintiff Shawnae Coleman ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 11, 2010 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.  In light of the failure of the Administrative Law Judge ("ALJ") to ask the vocational expert whether her testimony conflicted with the Dictionary of Occupational Titles and, if so, whether there was a reasonable explanation for the conflict, this Court cannot determine whether the ALJ properly relied upon such expert's testimony and whether substantial evidence supports the ALJ's finding that plaintiff could perform alternative work.

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 17, 2008, plaintiff protectively filed an application for Supplemental Security Income benefits.  (Administrative Record ("AR") 87, 113).  Plaintiff asserted that she became disabled on February 2, 2005, due to "mental illness, anxiety, cholesterol."  (AR 113, 133).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on August 28, 2009.  (AR 17-38).

On October 5, 2009, the ALJ determined that plaintiff was not disabled.  (AR 9-16).  Specifically, the ALJ found:  (1) plaintiff suffered from the following severe impairment: anxiety disorder (AR 11); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 12); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations [1] (AR 13); (4) plaintiff could not perform her past relevant work (AR 15); and (5) there are jobs that exist in significant numbers in the national

---

[1] The ALJ determined that plaintiff (1) is limited to one-to-two step jobs with no production quotas; (2) is limited to no more than occasional contact with supervisors, co-workers, and the public; and (3) could not do fast-paced jobs.  (AR 13).

economy that plaintiff could perform, such as sandwich maker and janitor. (AR 15-16) (adopting testimony of vocational expert).

The Appeals Council denied plaintiff's application for review. (AR 1-3).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///

|   |     |                                                                  |
|---|-----|------------------------------------------------------------------|
| 1 | (4) | Does the claimant possess the residual functional capacity to    |
| 2 |     | perform her past relevant work?[2]  If so, the claimant is not   |
| 3 |     | disabled.  If not, proceed to step five.                         |
| 4 | (5) | Does the claimant's residual functional capacity, when           |
| 5 |     | considered with the claimant's age, education, and work          |
| 6 |     | experience, allow her to adjust to other work that exists in     |
| 7 |     | significant numbers in the national economy?  If so, the         |
| 8 |     | claimant is not disabled.  If not, the claimant is disabled.     |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

### B. Step Five

As noted above, if, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  Where, as here, a claimant suffers only non-exertional limitations, the Commissioner must consult a vocational expert.  Osenbrock v. Apfel, 240 F.3d

///

---

[2] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

4

1157, 1162 (9th Cir. 2001) (citing Tackett); Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir.), as amended (2006).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record. See Tackett, 180 F.3d at 1101; see also Robbins v. Social Security Administration, 466 F.3d 880, 886 (9th Cir. 2006) (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information). The DOT is the presumptive authority on job classifications. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p).[3] In order for an ALJ to accept vocational expert testimony

---

[3]Social Security rulings are binding on the Administration. See Terry, 903 F.2d at 1275. Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi, 486 F.3d at 1152 n.6.

that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citations omitted).

### C. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins, 466 F.3d at 882 (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. PERTINENT FACTS

During the administrative hearing, the vocational expert testified that a hypothetical individual of plaintiff's age, education, and work background, with the residual functional capacity assessed by the ALJ for plaintiff (no exertional

6

limitations, but limited to one-to-two-step jobs with no production quotas and no fast-paced job situations, with occasional contact with supervisors, the public and co-workers) could perform the job of sandwich maker (DOT § 317.664-010, medium, unskilled, specific vocational preparation (SVP) 2), as to which there were 6800 jobs locally and 134,000 nationally, and the job of janitor (DOT § 381.687-018, medium, unskilled, SVP 2), as to which there were 5100 jobs locally, and 700,000 nationally. (AR 36-37).

The ALJ did not ask the vocational expert whether her opinion was consistent with the DOT.

The ALJ, essentially adopting the vocational expert's opinion, determined that plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, except that she was limited to one-to-two step jobs with no production quotas, no more than occasional contact with supervisors, co-workers, and the public, and no fast-paced jobs. (AR 13)

**V.     DISCUSSION**

Plaintiff asserts that the ALJ erred at step five in finding that plaintiff could perform the jobs of sandwich maker and janitor because, according to the DOT, such jobs would require plaintiff to function at reasoning level 2 – a reasoning level which plaintiff contends is inconsistent with the ALJ's determination that plaintiff is limited to one-to-two step jobs. Defendant essentially disagrees with plaintiff's premise, arguing that plaintiff's limitations, as determined by the ALJ, do not preclude her from performing jobs which require a reasoning level of 2.

DOT job descriptions include a "General Educational Development" ("GED") definition component which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Grigsby v. Astrue, 2010 WL 309013, *2 (C.D. Cal. Jan. 22, 2010). The GED component is comprised of discrete scales, including a scale

///

for "Reasoning Development." Id.  The GED reasoning development scale ranges from Level 1 (low) to Level 6 (high).  Id.  Levels 1 and 2 are defined as follows:

> Level 1   Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2   Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

Id. (citing DOT, Appendix C).

In this case, as noted above, the ALJ adopted the vocational expert's finding that plaintiff could perform the occupations of sandwich maker and janitor, both of which, according to the DOT, require a reasoning level of 2.  (AR 21; DOT § 317.664-010 [sandwich maker]; DOT § 381.687-018 [janitor]).  Such a reasoning level at least potentially conflicts with the ALJ's determination that plaintiff is limited to one-to-two step jobs.  However, as defendant concedes (Defendant's Motion at 6), the ALJ did not ask the vocational expert whether her testimony conflicted with the DOT and, if so, whether there was a reasonable explanation for the conflict.  (See AR 35-37).  The Court may find this procedural error to be harmless if there was no conflict or if the vocational expert provided sufficient support for her conclusion to justify any potential conflicts.  Massachi, 486 F.3d at 1154 n.19.  On this record, the Court cannot find the absence of a conflict or sufficient support provided by the vocational expert to justify any potential conflict.

The Court recognizes, as defendant points out, that the weight of prevailing authority precludes a finding of any inconsistency between a reasoning level of two and a mere limitation to simple, repetitive tasks or unskilled work.  See, e.g.,

Salazar v. Astrue, 2008 WL 4370056, *7 (C.D. Cal. Sept. 23, 2008) (numerous courts have rejected argument that limitation to simple, repetitive tasks is inconsistent with level two reasoning ability); Tudino v. Barnhart, 2008 WL 4161443, *10 (S.D. Cal. Sept. 5, 2008) (capacity to perform simple repetitive tasks consistent with unskilled work; level two reasoning appears to be breaking point for those individuals limited to performing only simple repetitive tasks); Charles v. Astrue, 2008 WL 4003651, *4-*5 (W.D. La. Aug. 7, 2008) (because of level two's use of term "uninvolved" in conjunction with "detailed," level two consistent with a residual functional capacity to perform simple, routine, repetitive work tasks); Isaac v. Astrue, 2008 WL 2875879, *3-*4 (E.D. Cal. July 24, 2008) (limitation to simple job instructions consistent with level 2 reasoning); Squier v. Astrue, 2008 WL 2537129, *5 (C.D. Cal. June 24, 2008) (limitation to simple, repetitive tasks not inconsistent with ability to perform jobs with reasoning level of two; observing that while level two uses term "detailed instructions," "it specifically caveats that the instructions would be uninvolved – that is, not a high level of reasoning); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning consistent with residual functional capacity to perform simple and routine work); Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (plaintiff's ability to perform simple tasks that had some element of repetitiveness to them indicated reasoning level of two; while level 2 references ability to follow detailed instructions, it qualifies and downplays the rigorousness of those instructions by labeling them as uninvolved); Flaherty v. Halter, 182 F. Supp. 2d 824, 850 (D. Minn. (2001) ("the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation" to "simple, routine, repetitive, concrete, tangible tasks").

      However, the ALJ in this case did not limit plaintiff merely to simple, repetitive tasks or unskilled work. The ALJ, using words which nearly mirror the language contained in the description of reasoning level 1, also limited plaintiff to

1  "one-to-two-step jobs[.]" (AR 13).  In <u>Grigsby</u>, another case in which the ALJ had
2  used comparable language – limiting the claimant in that case to "simple repetitive
3  tasks involving two steps of instruction" – the court determined that because such
4  language corresponded to the DOT definition of Level 1 reasoning, the ALJ had
5  erred in concluding that the claimant could perform jobs which required a higher
6  reasoning level.  <u>Grigsby</u>, 2010 WL 309013 at *2.  Although defendant argues that
7  <u>Grigsby</u> is not persuasive, and that it has been undermined by subsequent
8  decisions of other courts, this Court disagrees.  (Defendant's Motion at 5) (citing
9  <u>Wortman v. Astrue</u>, 2010 WL 2652278, *6 (C.D. Cal. June 21, 2010, <u>Concha v.</u>
10 <u>Astrue</u>, 2010 WL 2569240, *4 (C.D. Cal. June 21, 2010); <u>Harris v. Astrue</u>, 2010
11 WL 1641341 *13 (C.D. Cal. Apr. 21, 2010)).  While the subsequent cases cited by
12 defendant, like the weight of prevailing authority referenced above, reject the
13 notion that a limitation to simple repetitive tasks necessarily limits a claimant to
14 jobs requiring a reasoning level of 1, such cases do not involve a determination by
15 an ALJ that a claimant is also limited to one-to-two step jobs.
16      Here, as in <u>Grisby</u>, the vocational expert did not discuss the GED or
17 reasoning development level of the alternative jobs in issue.  While it may be that
18 the vocational expert viewed there to be a distinction between "one-to-two-step"
19 jobs and jobs that require an ability to apply commonsense understanding to carry
20 out simple one- or two-step instructions (as specified in reasoning level 1), such
21 that the vocational expert's opinion did not conflict with the DOT, the ALJ's
22 failure to ask the vocational expert whether her testimony conflicted with the DOT
23 prevents the Court from so concluding here.[4]  Similarly, the Court cannot discern
24 from this record whether the vocational expert viewed there to be a potential
25 conflict between plaintiff's limitation to one-to-step-jobs and the ability to
26 perform jobs with a reasoning level of 2, but nonetheless had justifiable reasons to

---

28      [4]The ALJ's unsupported assertion that "the vocational expert's testimony is consistent with the information in the [DOT]" (AR 16) does not cure this defect.

believe that plaintiff could perform such jobs.  As a result, the Court cannot determine whether substantial evidence supports the ALJ's determination that plaintiff can perform other work that exists in significant numbers in the national economy.

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 28, 2011

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[5] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).